FILED

MAR 1 5 2022

CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF OHIO
CLEVELAND

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) INDICTMENT |
| Plaintiff, | ) |
| | ) |
| | ) 1:22 CR 85 |
| v. | ) CASE NO.: _____ |
| | ) Title 21, United States Code, |
| CHRISTOPHER FICKLIN, aka LLANTES, | ) Sections 841(a)(1), (b)(1)(A), |
| DAVID GOMEZ-ORRANTIA, aka TUTU, | ) 843(b), and 846; Title 18, |
| ▉▉▉▉▉▉ ▉▉▉▉▉▉ | ) United States Code; Sections |
| | ) 922(g)(1), 1952(a)(3), |
| ▉▉▉▉▉▉ | ) 1956(a)(2) and (h)) and 2 |
| ROBERT ATKINSON, | ) |
| Defendants. | ) JUDGE POLSTER |

COUNT 1
(Conspiracy to Distribute and Possess with Intent to Distribute Controlled Substances,
21 U.S.C. §§ 846)

The Grand Jury charges:

1.      Beginning on or about September, 2017, and continuing through on or about October,

2021 in the Northern District of Ohio, Eastern Division, and elsewhere, Defendants CHRISTOPHER

FICKLIN, aka "LLANTES", DAVID GOMEZ-ORRANTIA, aka "TUTU", ▉▉▉▉▉▉ ▉▉▉▉▉▉

▉▉▉▉▉▉▉▉▉▉▉▉ and ROBERT ATKINSON did knowingly and intentionally

combine, conspire, confederate, and agree together and with each other and with diverse others

known and unknown to the Grand Jury, to distribute and possess with intent to distribute 5,000

grams or more of a mixture and substance containing a detectable amount of cocaine, a Schedule II

controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1), (b)(1)(A).

MANNER AND MEANS OF THE CONSPIRACY

2.      It was part of the conspiracy that:

1

A. FICKLIN obtained kilogram quantities of cocaine from GOMEZ-ORRANTIA.

B. FICKLIN redistributed cocaine to ATKINSON and others in Cleveland and elsewhere in the Northern District of Ohio for further redistribution.

C. Person-1 (an individual known to the Grand Jury, but not indicted herein) delivered the kilograms of cocaine to FICKLIN at 7XXX Carnegie Avenue, Cleveland, Ohio.

D. Person-1 documented the United States currency transactions with FICKLIN in a hand-written ledger.

E.              transported Person-1 from the United States/Mexico border to the Northern District of Ohio, and trained Person-1 on the operations of the Drug Trafficking Organization (DTO).

F. Conspirators used semi-trailer trucks with aftermarket hidden compartments/traps to transport kilograms of cocaine from Mexico to the Northern District of Ohio, and to transport drug proceeds back to Mexico.

G. Conspirators used cars and SUVs with aftermarket hidden compartments/traps to transport kilograms of cocaine to FICKLIN at 7XXX Carnegie Avenue, Cleveland, Ohio.

H. Conspirators used multiple telephones to conduct drug trafficking activity by making and receiving telephone calls and sending and receiving text messages and using the WhatsApp application to communicate. Conspirators used coded/slang terminology to obscure and disguise the true nature of their activities and the true meaning of their conversations.

## ACTS IN FURTHERANCE OF THE CONSPIRACY

3.      In furtherance thereof, and to effect and conceal the existence of the conspiracy, the defendants and others performed acts in the Northern District of Ohio, and elsewhere, including but not limited to the following:

4.      On or about January 8, 2019,                         and Person-1 entered the United States of America at the Santa Theresa, New Mexico Port of Entry to engage in drug trafficking activities on behalf of the DTO.

5.      On or about January 18, 2019, GOMEZ-ORRANTIA and                         entered the United States of America at the Santa Theresa, New Mexico Port of Entry to engage in drug trafficking activities on behalf of the DTO.

6.      On April 12, 2019, E.C. (a person known to the grand jury but not indicted herein) applied for Certificate of Title in Cuyahoga County for a 1995 Chevy Caprice Classic, VIN# 1G1B152PXSR187813 (a vehicle which was later used to transport kilograms of cocaine and cocaine sales proceeds by other conspirators).

7.      On or about April 14, 2019,                         entered the United States of America at the Santa Theresa, New Mexico Port of Entry to engage in drug trafficking activities on behalf of the DTO.

8.      On or about May 30, 2019, P.M. (a person known to the grand jury but not indicted herein) opened an account with First Energy Services for 5XXX Farr Avenue. Lorain, Ohio (a residence utilized by                         and Person-1 to count and package cocaine sales proceeds that were later transported back to Mexico), in her name.

9.      On or about June 5, 2019, E.C. (a person known to the grand jury but not indicted herein) transferred the title of a 2015 Nissan Sentra, VIN# 3N1AB7AP2FY367020 (a vehicle which

3

was later used to transport kilograms of cocaine and cocaine sales proceeds by other conspirators), to his/her name.

      10.    On or about June 10, 2020, ▓▓▓▓▓▓▓▓▓▓ entered the United States of America on foot at the Columbus, New Mexico Port of Entry to engage in drug trafficking activities on behalf of the DTO.

      11.    On or about June 11, 2020, Person-1 entered the United States of America on foot at the Columbus, New Mexico Port of Entry to engage in drug trafficking activities on behalf of the DTO.

      12.    From on or about June 11, 2020, through on or about June 14, 2020, ▓▓▓▓▓▓ drove Person-1 from New Mexico to the Northern District of Ohio Entry to engage in drug trafficking activities on behalf of the DTO.

      13.    From on or about June 14, 2020, through on or about June 30, 2020, ▓▓▓▓▓▓ trained Person-1 on the operations of the DTO, including how to retrieve kilograms from aftermarket hidden compartments/traps in semi-trailer trucks, introducing Person-1 to FICKLIN, and instructing Person-1 how to document DTO transactions in a hand-written ledger.

      14.    From on or about June 14, 2020, through on or about June 30, 2020, FICKLIN obtained and possessed 30 kilograms of cocaine, delivered to him by Person-1 and ▓▓▓▓▓▓ at 7XXX Carnegie Avenue, Cleveland, Ohio.

      15.    On or about June 14, 2020, between approximately 8:03 p.m. and 8:27 p.m., FICKLIN and ▓▓▓▓▓▓▓▓ engaged in a text message conversation on the telephone. ▓▓▓▓▓▓▓▓ said, "I'm the ▓▓ (identifying himself to FICKLIN as the new contact to the Mexican Drug Trafficking Organization) how are you ." ▓▓▓▓▓▓▓▓ then said, "in the morning it would be better for me (to meet with FICKLIN to deliver kilograms of cocaine), tell me

what time can you." FICKLIN responded, "I'm good." _____ replied, "ok."
FICKLIN said, "9 am." _____ responded, "9, ok" and then said "Tanks (thanks)."
FICKLIN said, "No problem."

16.    On or about June 14, 2020, FICKLIN and GOMEZ-ORRANTIA engaged in a text message conversation on the telephone. FICKLIN said, "Hola (hello)." GOMEZ-ORRANTIA responded, "Hey." FICKLIN then said, "Im here."

17.    On or about June 14, 2020, _____ and Person-1 drove a 2015 Nissan Sentra to 7XXX Carnegie Avenue, Cleveland, Ohio to meet with FICKLIN and deliver kilograms of cocaine.

18.    On or about June 15, 2020, at approximately 8:00 a.m., _____ sent FICKLIN two text messages on the telephone regarding their meeting that morning. _____ said, "Morning" then said "5 minuts (indicating that _____ and Person-1 would arrive at FICKLIN's trucking warehouse at 7XXX Carnegie Avenue, Cleveland, Ohio in 5 minutes to deliver kilograms of cocaine or pickup cocaine sales proceeds)."

19.    On or about June 16, 2020, between approximately 7:43 a.m. and 7:54 a.m., FICKLIN and _____ engaged in a text message conversation on the telephone to set up a cocaine delivery and/or cocaine sales proceed pickup for that day. _____ said, "Morning" then "9 am" then "Ok." FICKLIN responded, "Morning" then "Yes 9am (agreeing to a meet at 9:00 a.m.)." _____ said, "Ok."

20.    On or about June 16, 2020, between approximately 6:10 p.m. and 6:12 p.m., FICKLIN and _____ engaged in a text message conversation on the telephone. FICKLIN said, "Hello can you tell grandpa (GOMEZ-ORRANTIA) call me please (regarding DTO business)." _____ replied, "Ok" and then "Yes sr."

5

21.     On or about June 17, 2020, between approximately 1:59 p.m. and 3:13 p.m.,

FICKLIN and ████████████ engaged in a text message conversation on the telephone to set

up a cocaine delivery and/or cocaine sales proceeds pickup for the following day.  FICKLIN said,

"Tomorrow at 9am." ████████████ responded, "Ok," then said "Perfec (perfect)," and

"Tanks (thanks)."

22.     On or about June 18, 2020, between approximately 7:19 a.m. and 7:55 a.m.,

FICKLIN and ████████████ engaged in a text message conversation on the telephone

discussing their meeting later that morning.  FICKLIN said, "Good morn." ████████████

replied, "Good morning."  A few minutes later, ████████████ said, "5 minutes (indicating

that ████████████ and Person-1 would arrive at FICKLIN's trucking warehouse at 7XXX

Carnegie Avenue, Cleveland, Ohio in 5 minutes)."  FICKLIN replied, "Ok."

23.     On or about June 22, 2020, between approximately 7:16 a.m. and 7:22 a.m.,

FICKLIN and ████████████ engaged in a text message conversation on the telephone.

FICKLIN said, "Goodmorn." ████████████ replied, "Morning." ████████████

then said, "No to day (indicating that ████████████ and Person-1 would not make a trip to

FICKLIN's trucking warehouse at 7XXX Carnegie Avenue, Cleveland, Ohio that day to deliver

kilograms of cocaine or pickup cocaine sales proceeds)."  FICKLIN asked, "9am?" ████████

████████████ replied, "No sr."  FICKLIN asked, "When (for a delivery of cocaine kilograms or

cocaine sales proceeds pickup)."  A few minutes later, FICKLIN said, "Let me know when."

████████████ replied, "Ok."

24.     On or about June 22, 2020, at approximately 3:04 p.m., FICKLIN called GOMEZ-

ORRANTIA on the telephone to discuss DTO operations.

6

25.     On or about June 25, 2020, between approximately 7:24 a.m. and 7:32 a.m.,
FICKLIN and ▮▮▮▮▮▮▮ engaged in a text message conversation on the telephone.
FICKLIN said, "Goodmorn." ▮▮▮▮▮▮▮ responded, "Good morning," then said, "No to
day (indicating that ▮▮▮▮▮▮▮ and Person-1 would not make a trip to FICKLIN's
trucking warehouse at 7XXX Carnegie Avenue, Cleveland, Ohio that day to deliver kilograms of
cocaine or pickup cocaine sales proceeds)." FICKLIN replied, "Ok."

26.     During the month of July 2020, FICKLIN obtained and possessed 118 kilograms of
cocaine, delivered to him by Person-1, at 7XXX Carnegie Avenue, Cleveland, Ohio.

27.     On or about July 2, 2020, between approximately 7:57 a.m. and 2:57 p.m., FICKLIN
and ▮▮▮▮▮▮▮ engaged in a text message conversation on the telephone. FICKLIN said,
"Goodmorning." ▮▮▮▮▮▮▮ responded, "Hello," then "To day (indicating that ▮▮▮
▮▮▮▮▮ and Person-1 planned to make a trip to FICKLIN's trucking warehouse at 7XXX
Carnegie Avenue, Cleveland, Ohio that day to deliver kilograms of cocaine or pickup cocaine sales
proceeds that day)," and then "Ok ?" FICKLIN replied, "Ok what time (for the meeting)?"
▮▮▮▮▮▮▮ said, "4 pm ok." FICKLIN responded, "Ok." ▮▮▮▮▮▮▮ said,
"Ok tanks (thanks)." A few hours later, ▮▮▮▮▮▮▮ said, "5 minuts (indicating that
▮▮▮▮▮▮▮ and Person-1 would arrive at FICKLIN's trucking warehouse at 7XXX
Carnegie Avenue, Cleveland, Ohio in 5 minutes to deliver kilograms of cocaine or pickup cocaine
sales proceeds)." FICKLIN replied, "Ok."

28.     On or about July 3, 2020, FICKLIN and GOMEZ-ORRANTIA engaged in a text
message conversation on the telephone. FICKLIN said, "Im ready (for more kilograms of cocaine
and/or to pay the proceeds of cocaine sales)." GOMEZ-ORRANTIA responded, "Ok," then asked,

7

"At what time is good (for a meeting to deliver more kilograms of cocaine and/or pick up cocaine sales proceeds)." FICKLIN replied, "Monday it's the holiday (referring to July 4th holiday)."

29.     On or about July 6, 2020, between approximately 7:18 a.m. and 7:23 a.m., FICKLIN and GOMEZ-ORRANTIA engaged in a text message communication on the telephone to set up a telephone call to discuss DTO operations. GOMEZ-ORRANTIA said, "He (hey)," then instructed FICKLIN to "Cal (call GOMEZ-ORRANTIA)."

30.     On or about July 6, 2020, between approximately 7:18 a.m. and 7:57 a.m., FICKLIN and ▇▇▇▇▇▇▇▇ engaged in a text message conversation on the telephone to set up a cocaine delivery and/or cocaine sales proceeds pickup for later that morning. ▇▇▇▇▇▇▇▇ said, "Good morning," then said "Hello." FICKLIN responded, "Good morn," then said, "9 am (for the cocaine kilogram delivery and/or cocaine sales proceeds pickup)." ▇▇▇▇▇▇▇▇ said "Ok." A few minutes later, ▇▇▇▇▇▇▇▇ said, "5 min (indicating that ▇▇▇▇▇▇ and Person-1 would arrive at FICKLIN's trucking warehouse at 7XXX Carnegie Avenue, Cleveland, Ohio in 5 minutes to deliver kilograms of cocaine or pickup cocaine sales proceeds)." FICKLIN replied, "Make it 10 (indicating that FICKLIN would arrive at 7XXX Carnegie Avenue, Cleveland, Ohio in 10 minutes)." ▇▇▇▇▇▇▇▇ replied, "Ok."

31.     On or about July 6, 2020, at approximately 9:54 a.m., FICKLIN called GOMEZ-ORRANTIA on the telephone to discuss DTO operations.

32.     On or about July 10, 2020, between approximately 8:31 a.m. and 10:17 a.m., FICKLIN and ▇▇▇▇▇▇▇▇ engaged in a text message conversation on the telephone to set up the delivery of cocaine kilograms to FICKLIN and/or a cocaine sales proceeds pickup from FICKLIN. ▇▇▇▇▇▇▇▇ said, "Good morning," then said "Hello," and "Hello." ▇▇▇▇▇▇ ▇▇▇▇▇▇ continued, "To day (indicating that ▇▇▇▇▇▇▇▇ and Person-1 planned to

8

make a trip to FICKLIN's trucking warehouse at 7XXX Carnegie Avenue, Cleveland, Ohio that day to deliver kilograms of cocaine or pickup cocaine sales proceeds that day)," and "Ok." CHRITOPHER FICKLIN responded, "Gnd Morn."                   said, "Hello." FICKLIN asked, "When."                   said, "11 am (for the cocaine delivery and/or cocaine sales proceeds pickup) ok." FICKLIN said, "Ok." Later,                   wrote, "20 minutes (indicating that                   and Person-1 would arrive at FICKLIN's trucking warehouse at 7XXX Carnegie Avenue, Cleveland, Ohio in 20 minutes to deliver kilograms of cocaine or pickup cocaine sales proceeds)," and FICKLIN responded, "Ok." A few minutes later,                   said, "5 minutes (arriving in 5 minutes)."

33.    On or about July 10, 2020, between approximately 8:33 a.m. and 8:37 a.m., FICKLIN and GOMEZ-ORRANTIA engaged in a text message conversation on the telephone. The two exchanged greetings, then GOMEZ-ORRANTIA asked, "What time lunch? (asking what time did FICKLIN agree that                   and Person-1 to arrive at 7XXX Carnegie Avenue, Cleveland, Ohio to deliver kilograms of cocaine and/or pickup cocaine sales proceeds)." FICKLIN responded, "11 (11:00 a.m.)."

34.    On or about July 10, 2020, at approximately 10:12 a.m., GOMEZ-ORRANTIA called FICKLIN on the telephone to discuss DTO operations.

35.    On or about July 10, 2020, at approximately 10:41 a.m., FICKLIN called GOMEZ-ORRANTIA on the telephone three times to discuss DTO operations.

36.    On or about July 10, 2020, at approximately 10:32 a.m., Person-1 sent FICKLIN a text message on the telephone stating, "Hello (indicating that Person-1 was now the DTO contact for FICKLIN to communicate with)."

9

37.     On or about July 10, 2020, at approximately 7:19 p.m., FICKLIN sent GOMEZ-
ORRANTIA a text message on the telephone, stating, "Im ready (for more kilograms of cocaine
and/or to pay the proceeds of cocaine sales)."

38.     On or about July 10, 2020, at approximately 7:57 p.m., FICKLIN sent

a text message on the telephone, stating, "Im ready (for more kilograms of cocaine
and/or to pay the proceeds of cocaine sales)."

39.     On or about July 11, 2020, between approximately 10:06 a.m. and 10:39 a.m.,
FICKLIN and GOMEZ-ORRANTIA engaged in a text message conversation that was a follow-up to
FICKLIN's text message the night before indicating that he (FICKLIN) was ready for more
kilograms of cocaine and/or to pay the cocaine sales proceeds.  GOMEZ-ORRANTIA said, "Ok"
then asked "What time (for Person-1 to travel to FICKLIN's trucking warehouse at 7XXX Carnegie
Avenue, Cleveland, Ohio to deliver cocaine kilograms and/or pickup cocaine sales proceeds)."
FICKLIN replied, "2 (2:00 p.m.)."  GOMEZ-ORRANTIA responded, "Ok."

40.     On or about July 11, 2020, between approximately 10:45 a.m. and 12:57 p.m.,
FICKLIN and Person-1 engaged in a text message conversation on the telephone confirm the
delivery of cocaine kilograms to FICKLIN and/or a cocaine sales proceeds pickup from FICKLIN at
2:00 p.m. that day.  Person-1 said, "Hello at 2 pm ok (for the meeting)."  A few minutes later,
Person-1 said, "?"  FICKLIN responded, "Ok," and then said, "Im here (at 7XXX Carnegie Avenue,
Cleveland, Ohio)."  Person-1 said, "5 minut (indicating that Person-1 would arrive at FICKLIN's
trucking warehouse at 7XXX Carnegie Avenue, Cleveland, Ohio in 5 minutes to deliver kilograms
of cocaine or pickup cocaine sales proceeds)."

41.     On or about July 12, 2020, at approximately 1:44 p.m., FICKLIN called GOMEZ-
ORRANTIA on the telephone to discuss DTO operations.

10

42.     On or about July 13, 2020, between approximately 7:18 a.m. and 7:19 a.m., FICKLIN and Person-1 engaged in a text message conversation on the telephone to set up a cocaine kilogram delivery to FICKLIN and/or a cocaine sales proceeds pickup from FICKLIN.  Person-1 said, "9? (asking to meet at 9:00 a.m.)"  FICKLIN responded, "930."  Person-1 said, "Okok."

43.     On or about July 13, 2020, at approximately 8:24 a.m., CHRISTOPHER FICKLIN called GOMEZ-ORRANTIA on the telephone to discuss the upcoming deliver of cocaine kilograms from Person-1 and/or FICKLIN's payment of cocaine sales proceeds to Person-1.

44.     On or about July 13, 2020, at approximately 8:27 a.m., FICKLIN and Person-1 engaged in a text message conversation on the telephone. Person-1 said, "5 miniuts (indicating that Person-1 would arrive at FICKLIN's trucking warehouse at 7XXX Carnegie Avenue, Cleveland, Ohio in 5 minutes to deliver kilograms of cocaine or pickup cocaine sales proceeds)," and FICKLIN replied, "Ok."

45.     On or about July 13, 2020, between approximately 12:40 p.m. and 1:06 p.m., FICKLIN and GOMEZ-ORRANTIA engaged in a text message conversation on the telephone. FICKLIN said, "Im ready (for more kilograms of cocaine and/or to pay the proceeds of cocaine sales)."  GOMEZ-ORRANTIA responded, "Ok."

46.     On or about July 13, 2020, between approximately 12:49 p.m. and 1:44 p.m., FICKLIN and Person-1 engaged in a text message conversation on the telephone.  FICKLIN said, "Im ready (for more kilograms of cocaine and/or to pay the proceeds of cocaine sales)."  Person-1 asked, "What time is ok (to meet the following morning)?"  FICKLIN responded, "9."

47.     On or about July 14, 2020, between approximately 7:14 a.m. and 7:58 a.m., FICKLIN and Person-1 engaged in a text message conversation on the telephone to confirm the delivery of cocaine kilograms to FICKLIN and/or a cocaine sales proceeds pickup from FICKLIN later that

11

morning. FICKLIN said, "Good morn." Person-1 responded, "Good morning," then said "9 ok (for the meeting)." FICKLIN replied, Ok." Later, Person-1 said, "5 m (indicating that Person-1 would arrive at FICKLIN's trucking warehouse at 7XXX Carnegie Avenue, Cleveland, Ohio in 5 minutes to deliver kilograms of cocaine or pickup cocaine sales proceeds)."

48.     On or about July 23, 2020, at approximately 10:23 a.m., FICKLIN called GOMEZ-ORRANTIA on the telephone to discuss DTO operations.

49.     On or about July 24, 2020, between approximately 10:14 a.m. and 10:25 a.m., FICKLIN and Person-1 engaged in a text message conversation on the telephone to set up the delivery of cocaine kilograms to FICKLIN and/or a cocaine sales proceeds pickup from FICKLIN the following day. Person-1 said, "Hello," and FICKLIN replied, "Hey." Person-1 asked, "at what time tomorrow?" FICKLIN replied, "10am."

50.     On or about July 24, 2020, at approximately 4:30 p.m., FICKLIN called GOMEZ-ORRANTIA on the telephone to discuss DTO operations.

51.     On or about July 25, 2020, between approximately 8:43 a.m. and 9:11 a.m., FICKLIN and Person-1 engaged in a text message conversation on the telephone confirming their meeting later that morning. FICKLIN said, "Goodmorn," and Person-1 replied, "Good morning." Person-1 then said, "15 m (indicating his arrival at 7XXX Carnegie Avenue, Cleveland, Ohio in 15 minutes)." FICKLIN later said, "10," and then said, "Im here (at 7XXX Carnegie Avenue, Cleveland, Ohio)."

52.     On or about July 25, 2020, at approximately 9:53 a.m., FICKLIN called GOMEZ-ORRANTIA on the telephone to discuss DTO operations.

53.     On or about July 25, 2020, at approximately 1:17 p.m., FICKLIN sent GOMEZ-ORRANTIA a text message on the telephone, stating, "Im ready (for more kilograms of cocaine and/or to pay the proceeds of cocaine sales)."

12

54.    On or about July 25, 2020, between approximately 1:17 p.m. and 7:34 p.m., FICKLIN and Person-1 engaged in a text message conversation on the telephone. FICKLIN said, "Im ready (for more kilograms of cocaine and/or to pay the proceeds of cocaine sales)." Person-1 responded, "Okok," then said, "when I see you (to deliver kilograms of cocaine and/or pickup cocaine sales proceeds)?" FICKLIN replied, "Ill let you know soon." Several hours later, FICKLIN said, "10am (to meet the following morning)," and Person-1 confirmed.

55.    On or about July 26, 2020, between approximately 8:51 a.m. and 9:16 a.m., FICKLIN and Person-1 engaged in a text message conversation on the telephone. FICKLIN said, "30 minutes (until FICKLIN would arrive at 7XXX Carnegie Avenue, Cleveland, Ohio to receive kilograms of cocaine from person-1 and/or deliver cocaine sales proceeds to Person-1)." Several minutes later, FICKLIN said, "15 minutes sorry." Person-1 said, "Ok."

56.    On or about July 26, 2020, FICKLIN delivered/transferred $989,470.00 of cocaine sales proceeds to Person-1.

57.    On or about July 26, 2020, Person-1 recorded the deposit of $989,470.00 of cocaine sales proceeds from FICKLIN in a hand-written ledger.

58.    On or about July 26, 2020, between approximately 11:11 p.m. and 11:15 p.m., GOMEZ-ORRANTIA and Person-1 engaged in a text message conversation via WhatsApp. GOMEZ-ORRANTIA asked, "Did the book (hand-written ledger documenting the cocaine sales proceeds received from FICKLIN and then sent to Mexico) come out ok?" Person-1 responded, "Yes the same as usual." A few minutes later, Person-1 said, "It's coming out tomorrow (cocaine sales proceeds will be loaded into aftermarket hidden compartments/traps in semi-trailer trucks), I'll give you the data that remains (the amount of cocaine proceeds left in the safe, not deposited in the trucks)." GOMEZ-ORRANTIA then thanked Person-1.

13

59.     On or about July 27, 2020, between approximately 10:39 a.m. and 12:15 p.m.,
GOMEZ-ORRANTIA and Person-1 engaged in a text message conversation via WhatsApp.
GOMEZ-ORRANTIA asked, "How are you?" Person-1 responded, "Working hard (to prepare the
cocaine sales proceeds to be deposited in the trucks for transport to Mexico)." A few minutes later,
GOMEZ-ORRANTIA asked, "Which is the first one (truck with cocaine sales proceeds) you will
have ready." Person-1 replied, "Both." Shortly thereafter, Person-1 said, "I'm finishing up
arranging the other one (semi-truck)" then said "that's the one (semi-truck with cocaine sales
proceeds) that is on its way out." Later, Person-1 wrote, "They (the trucks with cocaine sales
proceeds) are ready." GOMEZ-ORRANTIA asked, "How did it go." Person-1 responded, "about to
go eat, made me hungry."

60.     On or about July 27, 2020, Person-1 counted and packaged $726,000.00 of cocaine
sales proceeds.

61.     On or about July 27, 2020, Person-1 secreted the $726,000.00 of cocaine sales
proceeds in an after-market hidden compartment within a semi-trailer truck to be transported to
Mexico.

62.     On or about July 27, 2020, Person-1 recorded an entry in a ledger/log demonstrating
that Person-1 deposited $726,000.00 in drug proceeds to Mexico.

63.     On or about July 27, 2020, between approximately 12:15 p.m. and 12:16 p.m.,
GOMEZ-ORRANTIA and Person-1 engaged in a text message conversation via WhatsApp.
GOMEZ-ORRANTIA asked, "Pass me the data (documentation of cocaine sales proceeds sent back
to Mexico) please." Person-1 responded, "I have them at the house (5XXX Farr Avenue, Lorain,
Ohio)" and then said, "I am on my way there (Farr Avenue), I will pass them (the numbers) to you."

14

Person-1 continued, stating, "I do not put it (make entries in the ledger) until they are ready (the money is loaded into the semi-trucks)." Person-1 then said, "here is how they ended up."

64.     On or about July 27, 2020, at approximately 2:13 p.m., Person-1 sent a photograph of the ledger/log to GOMEZ-ORRANTIA via WhatsApp.

65.     On or about July 27, 2020, at approximately 2:14 p.m., GOMEZ-ORRANTIA and Person-1 engaged in a text message conversation via WhatsApp. Person-1 said, "That's how it is." GOMEZ-ORRANTIA responded, "Ok" and then said "thank you."

66.     On or about July 27, 2020, at approximately 4:20 p.m., FICKLIN called GOMEZ-ORRANTIA on the telephone to discuss DTO operations.

67.     On or about July 29, 2020, at approximately 12:18 p.m., FICKLIN called GOMEZ-ORRANTIA on the telephone to discuss DTO operations.

68.     On or about July 30, 2020, between approximately 12:18 p.m. and 12:22 p.m., FICKLIN and Person-1 engaged in a text message conversation on the telephone to arrange a delivery of cocaine kilograms to FICKLIN and/or cocaine sales proceeds pickup from FICKLIN the following day. Person-1 said, "Good morning." FICKLIN replied, "9am."

69.     On or about July 30, 2020, at approximately 5:38 p.m., FICKLIN called GOMEZ-ORRANTIA on the telephone to discuss DTO operations.

70.     On or about July 31, 2020, between approximately 7:25 a.m. and 8:00 a.m., FICKLIN and Person-1 engaged in a text message conversation on the telephone confirming their meeting later that morning. The two exchanged greetings. Person-1 said, "9 (am)." FICKLIN responded, "Yes."

71.     On or about July 31, 2020, at approximately 8:28 a.m., Person-1 sent GOMEZ-ORRANTIA two text messages via WhatsApp stating, "Good morning" then "leaving now (to go to 7XXX Carnegie Avenue to pick up cocaine sales proceeds)."

72. On or about July 31, 2020, at approximately 9:00 a.m., Person-1 sent FICKLIN a text message on the telephone stating, "5 m (indicating his arrival at 7XXX Carnegie Avenue, Cleveland, Ohio in 5 minutes)".

73. On or about July 31, 2020, at approximately 9:05 a.m., Person-1 sent GOMEZ-ORRANTIA a text message via WhatsApp stating, "Arriving (at 7XXX Carnegie Avenue, Cleveland, Ohio).

74. On or about July 31, 2020, FICKLIN delivered/transferred $30,000.00 of cocaine sales proceeds to Person-1.

75. On or about July 31, 2020, at approximately 9:18 a.m., Person-1 sent GOMEZ-ORRANTIA a text message via WhatsApp stating, "Leaving (from 7XXX Carnegie Avenue, Cleveland, Ohio).

76. On or about July 31, 2020, between approximately 9:34 a.m. and 10:18 a.m., GOMEZ-ORRANTIA and Person-1 engaged in a text message conversation via WhatsApp. Person-1 said, "He (FICKLIN) gave me 30 ($30,000.00 of cocaine sales proceeds) that were missing (not previously paid) he said." GOMEZ-ORRANTIA responded, "Good morning" then said "Perfect." A few minutes later, GOMEZ-ORRANTIA asked, "How did it (the meeting with FICKLIN) go" and then asked, "Everything ok." Person-1 responded, "Affirmative all good."

77. On or about July 31, 2020, Person-1 recorded the deposit of $30,000.00 of cocaine sales proceeds from FICKLIN in a hand-written ledger.

78. On or about July 31, 2020, at approximately 1:08 p.m., FICKLIN sent GOMEZ-ORRANTIA a text message on the telephone stating, "Im ready (for more kilograms of cocaine and/or to pay the proceeds of cocaine sales)."

16

79.     On or about July 31, 2020, at approximately 11:33 p.m., GOMEZ-ORRANTIA sent FICKLIN a text message on the telephone stating, "Give me a call when u have a chanse (chance) please."

80.     On or about July 31, 2020, at approximately 11:33 p.m., FICKLIN called GOMEZ-ORRANTIA on the telephone to discuss DTO operations.

81.     During the month of August 2020, FICKLIN obtained and possessed 144 kilograms of cocaine, delivered to him by Person-1, at 7XXX Carnegie Avenue, Cleveland, Ohio.

82.     On or about August 1, 2020, between approximately 7:33 a.m. and 7:35 a.m., FICKLIN and Person-1 engaged in a text message conversation on the telephone to arrange a cocaine kilogram delivery to FICKLIN and/or a cocaine sales proceeds pickup from FICKLIN later that morning. The two exchanged greetings, then FICKLIN said, "1030 (setting the meeting time at 10:30 a.m.)." Person-1 responded, "Ok."

83.     On or about August 1, 2020, between approximately 8:32 a.m. and 10:35 a.m. GOMEZ-ORRANTIA and Person-1 engaged in a text messaged conversation via WhatsApp. Person-1 said, "Good morning," then said, "Leaving (to go to 7XXX Carnegie Avenue Cleveland, Ohio to deliver kilograms of cocaine and/or pickup cocaine sales proceeds from FICKLIN)." At approximately 9:52 a.m., GOMEZ-ORRANTIA asked, "How's it going." Person-1 responded, "Waiting" then said, "it was at 10:30." GOMEZ-ORRANTIA replied, "Well I confirmed at 9 (9:00 a.m. for the meeting) with the dude (FICKLIN)." GOMEZ-ORRANTIA continued, "If he (FICKLIN) asks you, tell him that he told grandfather (GOMEZ-ORRANTIA) that at nine." Person-1 responded, "Oh I'll tell you how long this is." At approximately 10:35 a.m., Person-1 said, "Arriving (at 7XXX Carnegie Avenue)."

17

84.     On or about August 1, 2020, FICKLIN delivered/transferred $899,560.00 of cocaine sales proceeds to Person-1.

85.     On or about August 1, 2020, between approximately 10:54 a.m. and 11:18 a.m. GOMEZ-ORRANTIA and Person-1 engaged in a text messaged conversation via WhatsApp. Person-1 said, "Leaving (from 7XXX Carnegie Avenue)." Person-1 then said. "900 (FICKLIN paid Person-1 $900,000.00 in cocaine sales proceeds during their meeting at 7XXX Carnegie Avenue)." GOMEZ-ORRANTIA thanked Person-1.

86.     On or about August 1, 2020, Person-1 recorded the deposit of $899,560.00 of cocaine sales proceeds from FICKLIN in a hand-written ledger.

87.     On or about August 1, 2020, between approximately 7:22 p.m. and 7:43 p.m. GOMEZ-ORRANTIA and Person-1 engaged in a text messaged conversation via WhatsApp. Person-1 said, "Ready I checked the data (the cocaine sales proceeds)." Person-1 continued, "All good." GOMEZ-ORRANTIA responded, "Perfect."

88.     On or about August 3, 2020, Person-1 counted and packaged $722,000.00 of cocaine sales proceeds.

89.     On or about August 3, 2020, Person-1 secreted the $722,000.00 of cocaine sales proceeds in an after-market hidden compartment within a semi-trailer truck to be transported to Mexico.

90.     On or about August 3, 2020, Person-1 recorded an entry in a ledger/log demonstrating that Person-1 deposited $722,000.00 in drug proceeds to Mexico.

91.     On or about August 3, 2020 at approximately 8:28 p.m., FICKLIN called GOMEZ-ORRANTIA on the telephone to discuss DTO operations.

18

92.     On or about August 4, 2020, between approximately 11:36 a.m. and 1:10 p.m.,

GOMEZ-ORRANTIA and Person-1 engaged in a text message conversation via WhatsApp

discussing the deliveries of cocaine kilograms to FICKLIN and the receipt of cocaine sales proceeds

from FICKLIN. GOMEZ-ORRANTIA instructed Person-1, "Send it (a photograph of the hand-

written drug ledger)." Person-1 responded, "let me go for it. (the ledger)." At approximately 12:12

p.m., Person-1 sent a photograph of the log/ledger to GOMEZ-ORRANTIA via WhatsApp. Person-

1 then said, "But my son I am missing (have not recorded) the other deposit." GOMEZ-

ORRANTIA responded, "Hahahaha" then said, "That I was just going to tell you." Person-1 said,

"Of 30 (referring to the $30,000.00 deposit of cocaine sales proceeds obtained from FICKLIN on

July 31, 2020)." GOMEZ-ORRANTIA then asked, "My son, do you have the hours (number of

kilograms delivered to FICKLIN) that we have delivered to Llantes (FICKLIN) since they arrived?"

Person-1 responded, "I'll let you know." Approximately three minutes later, Person-1 wrote, "178

(kilograms of cocaine delivered to FICKLIN since Person-1's arrival in Northern Ohio)." GOMEZ-

ORRANTIA asked, "100 percent sure my son?" Person-1 replied, "They are the ones (kilograms of

cocaine) I have written down" then said "Let me give it another check." A few minutes later,

Person-1 wrote, "Yes my son there have been 8 visits (deliveries of kilograms of cocaine to

FICKLIN at 7XXX Carnegie Avenue, Cleveland, Ohio)." Person-1 continued, "only 2 of them

recorded (in the ledger)." GOMEZ-ORRANTIA then asked, "How many hours (kilograms of

cocaine) have you put in (delivered to FICKLIN) by yourself?" Person-1 replied, "88 (kilograms of

cocaine delivered to FICKLIN by Person-1)." GOMEZ-ORRANTIA then asked, "And with the

█████ (████████████████ Person-1 replied, "90 (90 kilograms of cocaine delivered to

FICKLIN by Person-1 and ███████████████ GOMEZ-ORRANTIA then asked, "then the

statement (ledger/log)," then asked, "did you modify for me already" then "for you to send it (the

ledger/log) to me." Person-1 replied, "Yes I already updated it" then said, "I was checking it and it wasn't adding up." At approximately 12:34 p.m., Person-1 sent a photograph of the log/ledger to GOMEZ-ORRANTIA via WhatsApp. GOMEZ-ORRANTIA thanked Person-1, then said, "the deposit you secured (loaded in the semi-truck for transportation back to Mexico)" then "what was the total?" Person-1 responded, "722 ($722,000.00 in cocaine sales proceeds secreted in aftermarket hidden compartment/trap in a tractor trailer to be transported to Mexico)." GOMEZ-ORRANTIA then said, "the other" then "the one that is halfway done." Person-1 responded, "681 ($681,000.00 in cocaine sales proceeds to be sent back to Mexico)." GOMEZ-ORRANTIA said, "Ok" and thanked Person-1. Person-1 then said, I will send you the deposits with dates." GOMEZ-ORRANTIA replied, "No need that is the only one (deposit) I was doubting," At approximately 12:38 p.m. and 12:39 p.m., Person-1 sent two photographs of the log/ledger to GOMEZ-ORRANTIA via WhatsApp. At approximately 1:05 p.m., GOMEZ-ORRANTIA asked, "Do you have the dates for the deposits for Llantes (FICKLIN)" then, "for the hours (kilograms of cocaine)." Person-1 replied, "more or less, I'll send them to you." At approximately 1:06 p.m., Person-1 sent a photograph of the log/ledger to GOMEZ-ORRANTIA via WhatsApp. Person-1 said, "They are not exact, I was updating them as I went." Person-1 continued, "I have the ones for the deposit," then asked, "Do I send them?" GOMEZ-ORRANTIA replied, "I have those." Approximately three minutes later, Person-1 asked, "Is it adding up?" GOMEZ-ORRANTIA said, "Yes" and then "I am just catching up." GOMEZ-ORRANTIA continued, "All good, do not worry."

93.    On or about August 4, 2020 at approximately 2:15 p.m., FICKLIN called GOMEZ-ORRANTIA on the telephone to discuss DTO operations.

94.    On or about August 4, 2020, at approximately 8:29 p.m., FICKLIN and Person-1 engaged in a text message conversation on the telephone to arrange a cocaine kilogram delivery for

20

the following morning.  FICKLIN asked, "9am?"  Person-1 responded, "Yes."  FICKLIN said, "Ok."

95.     On or about August 5, 2020, at approximately 9:00 a.m., Person-1 sent FICKLIN a text message conversation on the telephone informing FICKLIN that Person-1 would arrive at 7XXX Carnegie Avenue in 5 minutes to deliver kilograms of cocaine or pickup cocaine sales proceeds.

96.     On or about August 5, 2020 at approximately 9:03 a.m., FICKLIN called GOMEZ-ORRANTIA on the telephone to discuss DTO operations.

97.     On or about August 6, 2020, between approximately 7:20 a.m. and 7:21 a.m., FICKLIN and Person-1 engaged in a text message conversation on the telephone to arrange a meeting later that morning.  The two exchanged greetings, then FICKLIN asked, "9am?"

98.     On or about August 6, 2020, at approximately 8:16 a.m., FICKLIN called GOMEZ-ORRANTIA on the telephone to arrange a meeting between FICKLIN and Person-1 later that morning.

99.     On or about August 6, 2020, between approximately 8:21 a.m. and 8:25 a.m., GOMEZ-ORRANTIA and Person-1 engaged in a text message conversation via WhatsApp.  Person-1 said, "Good morning," then said, "Llantes (FICKLIN) is asking me if at 9 (for a meeting)."  GOMEZ-ORRANTIA responded, "Yes" then said, "Please."  Person-1 replied, "Ok I did not know" then said, "I will take off (to travel to 7XXX Carnegie Avenue, Cleveland, Ohio to meet with FICKLIN for a cocaine kilogram and or cocaine proceeds exchange)."  GOMEZ-ORRANTIA replied, "They (FICKLIN) just advised me (referring to his telephone conversation with FICKLIN at 8:16 a.m. that morning)."

21

100.    On or about August 6, 2020 at approximately 8:25 a.m., GOMEZ-ORRANTIA called FICKLIN on the telephone to discuss Person-1's arrival that morning, but FICKLIN did not answer the call.

101.    On or about August 6, 2020, between approximately 9:08 a.m. and 9:31 a.m., GOMEZ-ORRANTIA and Person-1 engaged in a text message conversation via WhatsApp. Person-1 said, "Arriving (at 7XXX Carnegie Avenue)." At approximately 9:28 a.m.. Person-1 said, 720 ($720,000.00 in cocaine sales proceeds received from FICKLIN) leaving (from 7XXX Carnegie Avenue, Cleveland, Ohio)." GOMEZ-ORRANTIA said, "Perfect my son."

102.    On or about August 13, 2020, FICKLIN delivered/transferred $869,825.00 of cocaine sales proceeds to Person-1.

103.    On or about August 14, 2020, Person-1 counted and packaged $692,000.00 of cocaine sales proceeds.

104.    On or about August 14, 2020, Person-1 secreted the $692,000.00 of cocaine sales proceeds in an after-market hidden compartment within a semi-trailer truck to be transported to Mexico.

105.    On or about August 14, 2020, Person-1 recorded an entry in a ledger/log demonstrating that Person-1 deposited $692,000.00 in drug proceeds to Mexico.

106.    On or about August 16, 2020, Person-1 sent two photographs of the log/ledger to GOMEZ-ORRANTIA via WhatsApp.

107.    On or about August 19, 2020, GOMEZ-ORRANTIA sent Person-1 a text message via WhatsApp instructing Person-1 to "give it gas."

108.    On or about August 19, 2020, FICKLIN delivered/transferred $929,030.00 of cocaine sales proceeds to Person-1.

22

109.     On or about August 20, 2020, Person-1 counted and packaged $728,000.00 of cocaine sales proceeds.

110.     On or about August 20, 2020, Person-1 secreted the $728,000.00 of cocaine sales proceeds in an after-market hidden compartment within a semi-trailer truck to be transported to Mexico.

111.     On or about August 20, 2020, Person-1 recorded an entry in a ledger/log demonstrating that Person-1 deposited $728,000.00 in drug proceeds to Mexico.

112.     On or about August 20, 2020, Person-1 sent a photograph of the log/ledger to GOMEZ-ORRANTIA via WhatsApp.

113.     On or about August 21, 2020, between approximately 7:38 a.m. and 9:25 a.m., GOMEZ-ORRANTIA and Person-1 engaged in a text message conversation via WhatsApp. The two exchanged greetings, and then Person-1 said, "Ready as hell." A few minutes later, Person-1 said, "All the time he (FICKLIN) sends msg (messages) and now he (FICKLIN) doesn't." Later, Person-1 said, "Coming out," and "I already confirm (the meeting with FICKLIN)." GOMEZ-ORRANTIA said, "Ok my son." GOMEZ-ORRANTIA continued, "Yes give it gas (get the kilograms of cocaine from the tractor-trailer)." GOMEZ-ORRANTIA then said, "Good trips." Next, GOMEZ-ORRANTIA said, "Same and send him (FICKLIN) a message" then "that you are going there (7XXX Carnegie Avenue)." Person-1 explained, "I already confirmed (the trip with FICKLIN)," and later said, "arriving (at 7XXX Carnegie Avenue, Cleveland, Ohio)." A short time later, GOMEZ-ORRANTIA asked, "All well, my son," and Person-1 confirmed. Shortly thereafter, Person-1 said, "Leaving (from 7XXX Carnegie Avenue)." GOMEZ-ORRANTIA then asked, "how many hours (kilograms of cocaine)." Person-1 replied, "30 (kilograms of cocaine delivered to FICKLIN)."

23

114. On or about August 21, 2020, FICKLIN delivered/transferred $899,480.00 of cocaine sales proceeds to Person-1.

115. On or about August 24, 2020, Person-1 counted and packaged $728,000.00 of cocaine sales proceeds.

116. On or about August 24, 2020, Person-1 secreted the $728,000.00 of cocaine sales proceeds in an after-market hidden compartment within a semi-trailer truck to be transported to Mexico.

117. On or about August 24, 2020, Person-1 recorded an entry in a ledger/log demonstrating that Person-1 deposited $728,000.00 in drug proceeds to Mexico.

118. On or about August 24, 2020, Person-1 sent a photograph of the log/ledger to GOMEZ-ORRANTIA via WhatsApp.

119. On or about August 30, 2020, at approximately 1:22 p.m., GOMEZ-ORRANTIA called FICKLIN on the telephone twice to discuss DTO operations.

120. On or about August 30, 2020, at approximately 7:09 p.m., FICKLIN called GOMEZ-ORRANTIA five times on the telephone to discuss DTO operations.

121. On or about August 30, 2020, at approximately 7:33 p.m., FICKLIN called GOMEZ-ORRANTIA twice on the telephone to discuss DTO operations, but the calls went unanswered by GOMEZ-ORRANTIA.

122. On or about August 31, 2020, between approximately 12:15 p.m. and 3:02 p.m., FICKLIN and Person-1 engaged in a text message conversation on the telephone. The two exchanged greetings, then FICKLIN asked, "Can you have them (GOMEZ-ORRANTIA) call me." Person-1 responded, "If they (GOMEZ-ORRANTIA) already call you." FICKLIN replied, "No I tried calling (to GOMEZ-ORRANTIA)." Person-1 said, "it's ok they (GOMEZ-ORRANTIA) call

24

you." FICKLIN responded, "Ok im waiting on the call (from GOMEZ-ORRANTIA)." A short time later, FICKLIN said "430 (4:30 p.m. for a cocaine kilogram delivery and/or cocaine sales proceeds pickup at 7XXX Carnegie Avenue, Cleveland, Ohio)." Person-1 confirmed, "Ok."

123.    On or about August 31, 2020, between approximately 4:01 p.m. and 5:23 p.m., GOMEZ-ORRANTIA and Person-1 engaged in a text message conversation via WhatsApp. Person-1 said, "Leaving (to go to 7XXX Carnegie Avenue)." GOMEZ-ORRANTIA responded, "Good trip (to 7XXX Carnegie Avenue)." At approximately 4:40 p.m., Person-1 said, "Arriving (at 7XXX Carnegie Avenue)." At approximately 4:48 p.m., Person-1 said, "Leaving (from 7XXX Carnegie Avenue)." GOMEZ-ORRANTIA responded, "Perfect" then asked, "All well?" Person-1 replied, "Affirmative." GOMEZ-ORRANTIA asked, "How many hours (kilograms of cocaine delivered to FICKLIN at 7XXX Carnegie Avenue)." Person-1 replied, "30 (kilograms delivered to FICKLIN)." Later, GOMEZ-ORRANTIA asked, "You did not deposit it (cocaine sales proceeds obtained from FICKLIN)?" Person-1 replied, "I didn't put it (proceeds and ledger entry) together," then said, "Tomorrow."

124.    On or about August 31, 2020, at approximately 6:01 p.m., FICKLIN sent a text message to Person-1 on the telephone, stating, "Im ready (for more kilograms of cocaine and/or to pay the proceeds of cocaine sales)."

125.    On or about August 31, 2020, at approximately 7:31 p.m., GOMEZ-ORRANTIA and Person-1 engaged in a text message conversation via WhatsApp. Person-1 said, "Llantes (FICKLIN) is ready (for more kilograms of cocaine and/or to pay the proceeds of cocaine sales)." GOMEZ-ORRANTIA responded, "Little by little." GOMEZ-ORRANTIA then said, "Tomorrow early I think is better (to meet with FICKLIN for another cocaine kilogram delivery and/or cocaine sales proceeds pickup)."

126.     During the month of September 2020, FICKLIN obtained and possessed 91 kilograms of cocaine, delivered to him by Person-1, at 7XXX Carnegie Avenue, Cleveland, Ohio.

127.     On or about September 1, 2020, Person-1 counted and packaged $644,000.00 of cocaine sales proceeds.

128.     On or about September 1, 2020, Person-1 secreted the $664,000.00 of cocaine sales proceeds in an after-market hidden compartment within a semi-trailer truck to be transported to Mexico.

129.     On or about September 1, 2020, Person-1 recorded an entry in a ledger/log demonstrating that Person-1 deposited $664,000.00 in drug proceeds to Mexico.

130.     On or about September 1, 2020, FICKLIN delivered/transferred $899,880.00 of cocaine sales proceeds to Person-1.

131.     On or about September 1, 2020, Person-1 sent a photograph of the log/ledger to GOMEZ-ORRANTIA via WhatsApp.

132.     On or about September 2, 2020, Person-1 sent a photograph of the log/ledger to GOMEZ-ORRANTIA via WhatsApp.

133.     On or about September 8, 2020, Person-1 counted and packaged $744,000.00 of cocaine sales proceeds.

134.     On or about September 8, 2020, Person-1 secreted the $744,000.00 of cocaine sales proceeds in an after-market hidden compartment within a semi-trailer truck to be transported to Mexico.

135.     On or about September 8, 2020, Person-1 recorded an entry in a ledger/log demonstrating that Person-1 deposited $744,000.00 in drug proceeds to Mexico.

26

136.    On or about September 8, 2020, Person-1 sent a photograph of the log/ledger to GOMEZ-ORRANTIA via WhatsApp.

137.    On or about September 15, 2020, between approximately 6:29 a.m. and 6:39 a.m., FICKLIN and Person-1 engaged in a text message conversation on the telephone. FICKLIN said, "Goodmorn im ready (for more kilograms of cocaine and/or to pay the proceeds of cocaine sales) 9am (for a meeting)?" Person-1 responded, "Yes."

138.    On or about September 15, 2020, FICKLIN delivered/transferred $869,620.00 of cocaine sales proceeds to Person-1.

139.    On or about September 16, 2020, Person-1 counted and packaged $756,000.00 of cocaine sales proceeds.

140.    On or about September 16, 2020, Person-1 secreted the $756,000.00 of cocaine sales proceeds in an after-market hidden compartment within a semi-trailer truck to be transported to Mexico.

141.    On or about September 16, 2020, Person-1 recorded an entry in a ledger/log demonstrating that Person-1 deposited $756,000.00 in drug proceeds to Mexico.

142.    On or about September 16, 2020, FICKLIN delivered/transferred $300,000.00 of cocaine sales proceeds to Person-1.

143.    On or about September 16, 2020, Person-1 sent a photograph of the log/ledger to GOMEZ-ORRANTIA via WhatsApp.

144.    On or about September 17, 2020, between approximately 7:05 a.m. and 8:34 a.m., FICKLIN and GOMEZ-ORRANTIA engaged in a text message conversation on the telephone. FICKLIN said, "Gm (good morning) im ready (for more kilograms of cocaine and/or to pay the

proceeds of cocaine sales)." GOMEZ-ORRANTIA responded, "Ok," then asked, "What time is good?"

145. On or about September 17, 2020, FICKLIN delivered/transferred $929,410.00 of cocaine sales proceeds to Person-1.

146. On or about September 17, 2020, at approximately 8:50 p.m.. GOMEZ-ORRANTIA sent FICKLIN a text message on the telephone stating, "Please if u can large bills (large denominations of cash) 23."

147. On or about September 18, 2020, Person-1 counted and packaged $724,000.00 of cocaine sales proceeds.

148. On or about September 18, 2020, Person-1 secreted the $724,000.00 of cocaine sales proceeds in an after-market hidden compartment within a semi-trailer truck to be transported to Mexico.

149. On or about September 18, 2020, Person-1 recorded an entry in a ledger/log demonstrating that Person-1 deposited $724,000.00 in drug proceeds to Mexico.

150. On or about September 18, 2020, Person-1 sent a photograph of the log/ledger to GOMEZ-ORRANTIA via WhatsApp.

151. On or about September 21, 2020, Person-1 counted and packaged $688,000.00 of cocaine sales proceeds.

152. On or about September 21, 2020, Person-1 secreted the $688,000.00 of cocaine sales proceeds in an after-market hidden compartment within a semi-trailer truck to be transported to Mexico.

153. On or about September 21, 2020, Person-1 recorded an entry in a ledger/log demonstrating that Person-1 deposited $688,000.00 in drug proceeds to Mexico.

28

154.    On or about September 21, 2020, Person-1 sent a photograph of the log/ledger to GOMEZ-ORRANTIA via WhatsApp.

155.    On or about September 22, 2020, C.F. (a person known to the grand jury but not indicted herein) instructed E.C. (a person known to the grand jury but not indicted herein) to register the 2006 Jeep Cherokee, VIN# 1J4GR48K86C184011 (with an aftermarket hidden compartment/trap) to his/her name.

156.    On or about September 22, 2020, E.C. (a person known to the grand jury but not indicted herein) purchased the 2006 Jeep Cherokee, VIN# 1J4GR48K86C184011 (with an aftermarket hidden compartment/trap later driven by Person-1 to deliver kilograms of cocaine to FICKLIN and pickup cocaine sales proceeds from FICKLIN at 7XXX Carnegie Avenue, Cleveland, Ohio) from S.M. (a person known to the grand jury but not indicted herein) for $1,200.00

157.    On or about September 22, 2020, E.C. (a person known to the grand jury but not indicted herein) transferred the title of a 2006 Jeep Cherokee, VIN# 1J4GR48K86C184011 (a vehicle which was later used by Person-1 to transport kilograms of cocaine by other conspirators), to his/her name.

158.    On or about September 23, 2020, FICKLIN delivered/transferred $899,110.00 of cocaine sales proceeds to Person-1.

159.    On or about September 28, 2020, between approximately 9:13 a.m. and 9:15 a.m., GOMEZ-ORRANTIA and Person-1 engaged in a text message conversation via WhatsApp.  The two exchanged greetings, the GOMEZ-ORRANTIA said, "Throw the Llantes (go to FICKLIN)" then asked, "What does he (FICKLIN) tell you?"

160.    On or about September 28, 2020, between approximately 12:20 p.m. and 1:24 p.m., FICKLIN and Person-1 engaged in a text message conversation on the telephone to arrange a

29

cocaine kilogram delivery to FICKLIN or cocaine sales proceeds pickup from FICKLIN. The two exchanged greetings, then then Person-1 said "5 (5:00 p.m. for a meeting)." FICKLIN responded, "3 (suggesting 3:00 p.m. for the meeting)."

161.     On or about September 28, 2020, between approximately 1:42 p.m. and 1:44 p.m., GOMEZ-ORRANTIA and Person-1 engaged in a text message conversation via WhatsApp. During the conversation, GOMEZ-ORRANTIA explained that Person-1 would receive a new vehicle with an aftermarket hidden compartment/trap from FICKLIN to use to transport kilograms of cocaine and cocaine sales proceeds. GOMEZ-ORRANTIA "Let's go with Llantes (FICKLIN) to change the ship (vehicle to be driven by Person-1 to transport kilograms of cocaine and cocaine sales proceeds)." GOMEZ-ORRANTIA continued, "The other one (new vehicle) is ready." A few minutes later, GOMEZ-ORRANTIA explained, "I already talked to him (FICKLIN)" and then said, "Today we change the ship (vehicle to be driven by Person-1)."

162.     On or about September 28, 2020, FICKLIN and Person-1 engaged in a text message conversation on the telephone. Person-1 said, "I'm already here (at 7XXX Carnegie Avenue, Cleveland, Ohio)." FICKLIN responded that he would be there in 10 minutes. Later, FICKLIN said, "Here (7XXX Carnegie Avenue)," and Person-1 instructed FICKLIN to "Open (the garage door)."

163.     On or about September 28, 2020, FICKLIN delivered the 2006 Jeep Cherokee, IN# 1J4GR48K86C184011 (with an aftermarket hidden compartment/trap) to Person-1 to use to secrete and transport kilograms of cocaine and cocaine sales proceeds.

164.     On or about September 28, 2020, between approximately 3:26 p.m. and 7:26 p.m., GOMEZ-ORRANTIA and Person-1 engaged in a text message conversation via WhatsApp. GOMEZ-ORRANTIA asked, "But is it (the new 2006 Jeep Cherokee obtained from FICKLIN)

good?" Person-1 said, "He (FICKLIN) didn't want to give me the insurance (for the 2006 Jeep

Cherokee)." Person-1 explained that FICKLIN told Person-1 "I had to take it (the insurance) out,"

but "I told him no." Person-1 went on, "at last he (FICKLIN) gave it (the insurance) to me."

GOMEZ-ORRANTIA replied, "to hell." GOMEZ-ORRANTIA then asked, "How does it (the 2006

Jeep Cherokee obtained that day from FICKLIN) work?" Person-1 replied, "Good." GOMEZ-

ORRANITA then said, "Perfect." The two then discussed that Person-1 would again see FICKLIN

the next morning.

     165.    On or about September 29, 2020, Person-1 counted and packaged $716,000.00 of

cocaine sales proceeds.

     166.    On or about September 29, 2020, Person-1 secreted the $716,000.00 of cocaine sales

proceeds in an after-market hidden compartment within a semi-trailer truck to be transported to

Mexico.

     167.    On or about September 29, 2020, Person-1 recorded an entry in a ledger/log

demonstrating that Person-1 deposited $716,000.00 in drug proceeds to Mexico.

     168.    On or about September 29, 2020, Person-1 sent a photograph of the log/ledger to

GOMEZ-ORRANTIA via WhatsApp.

     169.    During the month of October 2020, FICKLIN obtained and possessed 150 kilograms

of cocaine, delivered to him by Person-1, at 7XXX Carnegie Avenue, Cleveland, Ohio.

     170.    On or about October 1, 2020, FICKLIN delivered/transferred $929,320.00 of cocaine

sales proceeds to Person-1.

     171.    On or about October 5, 2020, at approximately 9:07 a.m., Person-1 (operating the

2006 Jeep Cherokee) arrived at 7XXX Carnegie Avenue, Cleveland, Ohio to meet with FICKLIN

regarding drug trafficking activities.  A short time later, Person-1 departed 7XXX Carnegie Avenue, Cleveland, Ohio and drove to 5XXX Farr Avenue, Lorain, Ohio.

172.    On or about October 5, 2020, at approximately 9:07 a.m., Person-1 (operating the 2006 Jeep Cherokee) drove from 5XXX Farr Avenue, Lorain, Ohio to 8XX Taylor Street, Elyria, Ohio.

173.    On or about October 6, 2020, Person-1 counted and packaged $748,000.00 of cocaine sales proceeds.

174.    On or about October 6, 2020, Person-1 secreted the $748,000.00 of cocaine sales proceeds in an after-market hidden compartment within a semi-trailer truck to be transported to Mexico.

175.    On or about October 6, 2020, Person-1 recorded an entry in a ledger/log demonstrating that Person-1 deposited $748,000.00 in drug proceeds to Mexico.

176.    On or about October 6, 2020, FICKLIN delivered/transferred $929,450.00 of cocaine sales proceeds to Person-1.

177.    On or about October 6, 2020, Person-1 sent two photographs of the log/ledger to GOMEZ-ORRANTIA via WhatsApp.

178.    On or about October 8, 2020, Person-1 counted and packaged $728,000.00 of cocaine sales proceeds.

179.    On or about October 8, 2020, Person-1 secreted the $728,000.00 of cocaine sales proceeds in an after-market hidden compartment within a semi-trailer truck to be transported to Mexico.

180.    On or about October 8, 2020, Person-1 recorded an entry in a ledger/log demonstrating that Person-1 deposited $728,000.00 in drug proceeds to Mexico.

181. On or about October 13, 2020, between approximately 7:15 a.m. and 7:24 a.m., FICKLIN and Person-1 engaged in a text message conversation on the telephone to confirm a meeting that morning. The two exchanged greetings, and then agreed to meet at 9:00 a.m.

182. On or about October 13, 2020, at approximately 8:28 a.m., Person-1 sent GOMEZ-ORRANTIA a text message via WhatsApp stating, "Good morning my son, leaving (for 7XXX Carnegie Avenue, Cleveland, Ohio)."

183. On or about October 13, 2020, at approximately 9:05 a.m., FICKLIN arrived at 7XXX Carnegie Avenue, Cleveland, Ohio, operating a 2005 White Chevrolet Silverado pickup truck registered to the City of Cleveland, and parked next to the garage bay/door.

184. On or about October 13, 2020, at approximately 9:09 a.m., Person-1 sent GOMEZ-ORRANTIA a text message via WhatsApp stating, "Arriving (at 7XXX Carnegie Avenue)."

185. On or about October 13, 2020, between approximately 9:05 a.m. and 9:11 a.m., Person-1 arrived at 7XXX Carnegie Avenue, Cleveland, Ohio, operating the 2006 Jeep Cherokee. Person-1 pulled the Jeep Cherokee inside a garage bay, and the garage door closed behind the Jeep Cherokee.

186. On or about October 13, 2020, FICKLIN obtained and possessed 30 kilograms of cocaine delivered to him by Person-1 at 7XXX Carnegie Avenue, Cleveland, Ohio.

187. On or about October 13, 2020, at approximately 9:20 a.m., Person-1 sent GOMEZ-ORRANTIA a text message via WhatsApp stating, "Leaving (from 7XXX Carnegie Avenue)."

188. On or about October 13, 2020, at approximately 9:27 a.m., Person-1 exited the garage bay and departed from 7XXX Carnegie Avenue, Cleveland, Ohio, still operating the 2006 Jeep Cherokee.

189.     On or about October 13, 2020, between approximately 9:53 a.m. and 10:11 a.m.,

GOMEZ-ORRANTIA and Person-1 engaged in a text message conversation via WhatsApp.

GOMEZ-ORRANTIA asked, "How did it (meeting with FICKLIN) go my son?" and then, "All

good?" Person-1 responded, "Affirmative." Later, GOMEZ-ORRANTIA asked, "How many hours

(kilograms of cocaine delivered to FICKLIN) was that?" Person-1 replied, "30 (kilograms of

cocaine delivered to FICKLIN)."

190.     On or about October 13, 2020, between approximately 6:18 p.m. and 7:27 p.m.,

FICKLIN and Person-1 engaged in a text message conversation on the telephone. FICKLIN said,

"Ready (for more kilograms of cocaine and/or to pay the proceeds of cocaine sales)." The two then

agreed to meet the next morning at 9:00 a.m.

191.     On or about October 13, 2020, at approximately 7:20 p.m., Person-1 sent GOMEZ-

ORRANTIA a text message via WhatsApp stating, "Llantes (FICKLIN) is ready (for more

kilograms of cocaine and/or to pay the proceeds of cocaine sales)."

192.     On or about October 14, 2020, between approximately 7:51 a.m. and 7:53 a.m.,

FICKLIN and Person-1 engaged in a text message conversation on the telephone confirming their

9:00 a.m. meeting that morning.

193.     On or about October 14, 2020, between approximately 8:27 a.m. and 9:10 a.m.,

GOMEZ-ORRANTIA and Person-1 engaged in a text message conversation via WhatsApp. Person-

1 said, Good morning," then "taking off (for 7XXX Carnegie Avenue Cleveland, Ohio)." At

approximately 9:10 a.m., Person-1 said, "Arriving (at 7XXX Carnegie Avenue, Cleveland, Ohio)."

GOMEZ-ORRANITA responded, "Good morning," then "Keep me updated."

194. On or about October 14, 2020, at approximately 9:10 a.m., Person-1 arrived at 7XXX Carnegie Avenue, Cleveland, Ohio, operating the 2006 Jeep Cherokee. Person-1 pulled the Jeep Cherokee inside a garage bay, and the garage door closed behind the Jeep Cherokee.

195. On or about October 14, 2020, FICKLIN delivered/transferred $928,720.00 of cocaine sales proceeds to Person-1.

196. A short time later, Person-1 exited the garage bay and departed from 7XXX Carnegie Avenue, Cleveland, Ohio, still operating the 2006 Jeep Cherokee.

197. On or about October 14, 2020, at approximately 9:28 a.m.. GOMEZ-ORRANTIA and Person-1 engaged in a text message conversation via WhatsApp. Person-1 said, "Leaving," then said "930 (referring to the $928,720 in cocaine sales proceeds that FICKLIN just delivered to Person-1 during the meeting at 7XXX Carnegie Avenue, Cleveland, Ohio)." GOMEZ-ORRANTIA replied, "Have a good trip."

198. On or about October 15, 2020, Person-1 counted and packaged $772,000.00 of cocaine sales proceeds.

199. On or about October 15, 2020, Person-1 secreted the $772,000.00 of cocaine sales proceeds in an after-market hidden compartment within a semi-trailer truck to be transported to Mexico.

200. On or about October 15, 2020, Person-1 recorded an entry in a ledger/log demonstrating that Person-1 deposited $772,000.00 in drug proceeds to Mexico.

201. On or about October 15, 2020, Person-1 sent a photograph of the log/ledger to GOMEZ-ORRANTIA via WhatsApp.

202. On or about October 21, 2020, at approximately 9:28 a.m., Person-1 arrived at 8XX Taylor Street, Elyria, Ohio, operating the 2006 Jeep Cherokee, and drove the Jeep Cherokee inside the garage.

203. On or about October 21, 2020, at approximately 11:15 a.m., Person-1 arrived at 5XXX Farr Avenue, Lorain, Ohio.

204. On or about October 21, 2020, Person-1 counted and packaged $654,000.00 of cocaine sales proceeds.

205. On or about October 21, 2020, Person-1 secreted the $654,000.00 of cocaine sales proceeds in an after-market hidden compartment within a semi-trailer truck to be transported to Mexico.

206. On or about October 21, 2020, Person-1 recorded an entry in a ledger/log demonstrating that Person-1 deposited $654,000.00 in drug proceeds to Mexico.

207. On or about October 21, 2020, Person-1 sent a photograph of the log/ledger to GOMEZ-ORRANTIA via WhatsApp.

208. On or about October 23, 2020, Person-1 counted and packaged $90,000.00 of cocaine sales proceeds.

209. On or about October 23, 2020, Person-1 secreted the $90,000.00 of cocaine sales proceeds in an after-market hidden compartment within a semi-trailer truck to be transported to Mexico.

210. On or about October 23, 2020, Person-1 recorded an entry in a ledger/log demonstrating that Person-1 deposited $90,000.00 in drug proceeds to Mexico.

211. On or about October 23, 2020, Person-1 sent a photograph of the log/ledger to GOMEZ-ORRANTIA via WhatsApp.

36

212. On or about October 24, 2020, between approximately 8:41 a.m. and 9:55 a.m., FICKLIN and Person-1 engaged in a text message conversation on the telephone. FICKLIN said, "Gm (good morning)." Person-1 responded, "Gm (good morning)." FICKLIN asked, "what time (to meet for a cocaine kilogram delivery and/or cocaine sales proceeds pickup)." Person-1 replied, "Monday (indicating that a meeting would not take place that day)."

213. On or about October 25, 2020, between approximately 8:42 p.m. and 8:43 pm., FICKLIN and GOMEZ-ORRANTIA engaged in a text message conversation on the telephone. GOMEZ-ORRANTIA wrote, "Tmw 9 (indicating that Person-1 would travel to 7XXX Carnegie Avenue the next day at 9:00 a.m. for a cocaine kilogram delivery and/or cocaine sales proceeds pickup)." FICKLIN replied, "Ok."

214. On or about October 26, 2020, between approximately 6:40 a.m. and 6:59 a.m., FICKLIN and Person-1 engaged in a text message conversation on the telephone to confirm their meeting that morning. FICKLIN said, "Gm (good morning)." Person-1 responded, "Gm (good morning)," then said "10 (10:00 a.m.)." FICKLIN replied, "Ok."

215. On or about October 26, 2020, at approximately 8:02 a.m., Person-1 travelled from 5XXX Farr Avenue, Lorain, Ohio to 8XX Taylor Street, Elyria Ohio, in the 2006 Jeep Cherokee.

216. On or about October 26, 2020, at approximately 9:32 a.m., Person-1 departed from 8XX Taylor Street, Elyria Ohio, in a 2006 Jeep Cherokee and drove to 7XXX Carnegie Avenue, Cleveland, Ohio in the 2006 Jeep Cherokee.

217. On or about October 26, 2020, at approximately 10:09 a.m., Person-1 arrived at 7XXX Carnegie Avenue, Cleveland, Ohio, operating the 2006 Jeep Cherokee. Person-1 pulled the Jeep Cherokee inside a garage bay, and the garage door closed behind the Jeep Cherokee.

218.   On or about October 26, 2020, at approximately 10:11 a.m., C.F. (a person known to the grand jury but not indicted herein) arrived at 7XXX Carnegie Avenue, Cleveland, Ohio in a 2020 Black Ford F-350 pickup truck registered in his name.  C.F. pulled his 2020 Black Ford F-350 pickup truck into the same garage bay as Person-1, blocking Person-1's Jeep Cherokee inside.  The garage door closed behind C.F..

219.   On or about October 26, 2020, at approximately 10:20 a.m., C.F. (operating the 2020 Black Ford F-350 pickup truck) and Person-1 (operating the 2006 Jeep Cherokee) both exited the garage bay, and exited 7XXX Carnegie Avenue, Cleveland, Ohio.

220.   On or about October 26, 2020, between approximately 9:44 p.m. and 9:47 p.m., FICKLIN and Person-1 engaged in a text message conversation on the telephone.  FICKLIN said, "Ready (for more kilograms of cocaine and/or to pay the proceeds of cocaine sales) 9 (9:00 a.m.)." Person-1 responded, "Ok."

221.   On or about October 27, 2020, between approximately 7:23 a.m. and 7:59 a.m., FICKLIN and Person-1 engaged in a text message conversation on the telephone to confirm their meeting that morning.  Person-1 said, "Gm (good morning)."  FICKLIN responded, "Gm 9 (Good morning 9:00 a.m.)."  Person-1 replied, "Yes."

222.   On or about October 27, 2020, at approximately 8:31 a.m., Person-1 departed from 5XXX Farr Avenue, Lorain, Ohio, in a 2006 Jeep Cherokee and drove to 7XXX Carnegie Avenue, Cleveland, Ohio.

223.   On or about October 27, 2020, at approximately 9:05 a.m., Person-1 arrived at 7XXX Carnegie Avenue, Cleveland, Ohio, operating the 2006 Jeep Cherokee.  Person-1 pulled the Jeep Cherokee inside a garage bay, and the garage door closed behind the Jeep Cherokee.

38

224.    On or about October 27, 2020, FICKLIN delivered/transferred $929,450.00 of cocaine sales proceeds to Person-1.

225.    On or about October 27, 2020, at approximately 9:19 a.m., Person-1 (operating the 2006 Jeep Cherokee) exited the garage bay and departed 7XXX Carnegie Avenue, Cleveland, Ohio.

226.    On or about October 27, 2020, between approximately 12:38 p.m. and 3:47 pm., FICKLIN and GOMEZ-ORRANTIA engaged in a text message conversation on the telephone to set another meeting between FICKLIN and Person-1 the next morning.  FICKLIN wrote, "Tomorrow 9 (9:00 a.m.)."  GOMEZ-ORRANTIA responded, "Ok" and FICKLIN replied, "Ok."

227.    On or about October 28, 2020, between approximately 6:55 a.m. and 7:17 a.m., FICKLIN and Person-1 engaged in a text message conversation on the telephone to confirm their meeting for later that morning.  Person-1 said, "Gm (good morning)."  FICKLIN responded, "Gm (good morning)."  Person-1 said, "9 (9:00 a.m.)."  FICKLIN replied, "Ok."

228.    On or about October 28, 2020, at approximately 8:31 a.m., Person-1 departed from 8XX Taylor Street, Elyria Ohio, in the 2006 Jeep Cherokee and drove to 7XXX Carnegie Avenue, Cleveland, Ohio.

229.    On or about October 28, 2020, at approximately 9:08 a.m., Person-1 arrived at 7XXX Carnegie Avenue, Cleveland, Ohio, operating the 2006 Jeep Cherokee.  Person-1 pulled the Jeep Cherokee inside a garage bay, and the garage door closed behind the Jeep Cherokee.

230.    On or about October 28, 2020, FICKLIN obtained and 30 kilograms of cocaine from Person-1 at 7XXX Carnegie Avenue, Cleveland, Ohio.

231.    On or about October 28, 2020, at approximately 9:15 a.m., Person-1 (operating the 2006 Jeep Cherokee) exited the garage bay and departed 7XXX Carnegie Avenue, Cleveland, Ohio.

232.    On or about October 28, 2020, at approximately 10:07 a.m., ATKINSON arrived at 7XXX Carnegie Avenue, Cleveland, Ohio in a Black Ford pickup truck registered to T.W. (a person known to the Grand Jury but not indicted herein).  ATKINSON pulled the Black Ford pickup truck into the same garage bay that Person-1 had recently departed from.  The garage door closed behind ATKINSON's vehicle.

233.    On or about October 28, 2020, FICKLIN delivered a kilogram of cocaine to ATKINSON at 7XXX Carnegie Avenue, Cleveland, Ohio.

234.    On or about October 28, 2020, at approximately 10:17 a.m., the garage door re-opened, and ATKINSON departed the garage bay.  ATKINSON then departed from 7XXX Carnegie Avenue, Cleveland, Ohio and travelled Westbound on Carnegie Avenue.

235.    ATKINSON turned Northbound onto East 9th Street, and then Eastbound on Euclid Avenue.  ATKINSON parked the black Ford pickup truck in front of Heinen's grocery store and went inside.

236.    On or about October 28, 2020, at approximately 10:55 a.m., ATKINSON returned to the black Ford pickup truck, travelled Eastbound on Euclid Avenue, and then turned Northbound on East 17th Street.

237.    On or about October 28, 2020, ATKINSON possessed 1,021 grams of cocaine (obtained from FICKLIN at 7XXX Carnegie Avenue, Cleveland, Ohio earlier that morning), marijuana, three cellular phones, and $791.00 in United States currency.

238.    On or about October 28, 2020, Person-1 counted and packaged $772,000.00 of cocaine sales proceeds.

239. On or about October 28, 2020, Person-1 secreted the $772,000.00 of cocaine sales proceeds in an after-market hidden compartment within a semi-trailer truck to be transported to Mexico.

240. On or about October 28, 2020, Person-1 recorded an entry in a ledger/log demonstrating that Person-1 deposited $772,000.00 in drug proceeds to Mexico.

241. On or about October 28, 2020, between approximately 5:41 p.m. and 5:53 p.m., FICKLIN and GOMEZ-ORRANTIA engaged in a text message conversation on the telephone. FICKLIN wrote, "Im ready (for more kilograms of cocaine and/or to pay the proceeds of cocaine sales)." GOMEZ-ORRANTIA responded, "Ok tmw 9 ? (suggesting another meeting with Person-1 at 7XXX Carnegie Avenue, Cleveland, Ohio the following morning at 9:00 a.m.)." CRISTOPHER FICKLIN replied, "Yes."

242. On or about October 28, 2020, between approximately 5:41 p.m. and 5:57 p.m., FICKLIN and Person-1 engaged in a text message conversation on the telephone. FICKLIN said, "Im ready (for more kilograms of cocaine and/or to pay the proceeds of cocaine sales)." Person-1 responded, "Ok Tomorrow at 9? (confirming the meeting the following morning at 9:00 a.m.)."

243. On or about October 29, 2020, between approximately 7:04 a.m. and 8:05 a.m., FICKLIN and Person-1 engaged in a text message conversation on the telephone confirming their meeting that morning at 9:00 a.m.

244. On or about October 29, 2020, FICKLIN delivered/transferred $929,730.00 of cocaine sales proceeds to Person-1.

245. On or about October 30, 2020, Person-1 counted and packaged $868,000.00 of cocaine sales proceeds.

41

246. On or about October 30, 2020, Person-1 secreted the $868,000.00 of cocaine sales proceeds in an after-market hidden compartment within a semi-trailer truck to be transported to Mexico.

247. On or about October 30, 2020, Person-1 recorded an entry in a ledger/log demonstrating that Person-1 deposited $868,000.00 in drug proceeds to Mexico.

248. On or about October 30, 2020, Person-1 sent a photograph of the log/ledger to GOMEZ-ORRANTIA via WhatsApp.

249. On or about November 5, 2020, at approximately 5:23 p.m., GOMEZ-ORRANTIA sent FICKLIN a text message on the telephone. GOMEZ-ORRANTIA asked, "U wanna lunch tmw 9 (delivery of cocaine kilograms of cocaine sales proceeds pickup)?" FICKLIN did not respond.

250. On or about November 6, 2020, between approximately 4:30 p.m. and 4:32 p.m., FICKLIN and GOMEZ-ORRANTIA engaged in a text message conversation on the telephone to arrange a cocaine delivery for November 7, 2020. GOMEZ-ORRANTIA wrote, "?" FICKLIN responded, "Tomorrow 9 (9:00 a.m.)." GOMEZ-ORRANTIA replied, "Ok" then said, "Good."

251. On or about November 6, 2020, between approximately 4:32 p.m. and 4:46 p.m., FICKLIN and Person-1 engaged in a text message conversation on the telephone to confirm the delivery of cocaine kilograms on November 7, 2020. FICKLIN wrote, "Hello" and Person-1 responded, "Hello." FICKLIN asked, "Tomorrow 9? (9:00 a.m.?)." Person-1 responded, "Yes."

252. On or about November 7, 2020, between approximately 8:08 a.m. and 8:13 a.m., FICKLIN and Person-1 engaged in a text message conversation on the telephone to confirm the delivery of kilograms of cocaine later that morning. FICKLIN said, "Gm (good morning)" and then said "9 (9:00 a.m.). Person-1 responded, "Yes."

253.   On or about November 7, 2020, between approximately 8:24 a.m. and 8:26 a.m., GOMEZ-ORRANTIA and Person-1 engaged in a text message conversation on the telephone.  The two exchanged greetings, then GOMEZ-ORRANTIA asked, "what time are you going to see this man (FICKLIN)."  Person- replied, "I am going to leave," then at approximately 8:26 a.m. Person-1 said, "Leaving (for 7XXX Carnegie Avenue, Cleveland, Ohio to deliver kilograms of cocaine to FICKLIN)."  GOMEZ-ORRANITA said, "Have a good trip."

254.   On or about November 7, 2020, Person-1 drove a 2006 Jeep Cherokee in the direction of 7XXX Carnegie Avenue, Cleveland, Ohio.

255.   On or about November 7, 2020, Person-1 possessed 28 kilograms of cocaine, concealed in a hidden compartment within the 2006 Jeep Cherokee, when stopped by law enforcement authorities at approximately 8:42 a.m.

256.   On or about November 7, 2020, Person-1 possessed 2 cellular phones and 2,361.00 of drug proceeds.

257.   On or about November 7, 2020, Person-1 possessed 20.65 kilograms of cocaine at 8XX Taylor Street, Elyria, Ohio, concealed in a hidden compartment within a semi-trailer truck.

258.   On or about November 7, 2020, Person-1 possessed 179,300.00 of drug proceeds at 5XXX Farr Avenue, Lorain, Ohio.

259.   On or about November 7, 2020, at approximately 9:07 a.m., FICKLIN sent a text message to Person-1 on the telephone stating "? (inquiring why Person-1 had not made the 9:00 a.m. meeting to deliver kilograms of cocaine to FICKLIN)."

260.   On or about November 7, 2020 at approximately 10:04 a.m., GOMEZ-ORRANTIA called FICKLIN on the telephone to discuss Person-1's arrest, but FICKLIN did not answer the call.

43

261.     On or about November 7, 2020 at approximately 2:38 p.m., FICKLIN and GOMEZ-ORRANTIA spoke six times on the telephone about Person-1's arrest and other DTO operations.

262.     On or about June 2, 2021, ROBERT ATKINSON possessed drug trafficking packaging materials and paraphernalia at 5X Public Square, Apartment 8XX, Cleveland, Ohio.

263.     On or about October 14, 2021, FICKLIN possessed a Taurus handgun, bearing serial number TCM78142, loaded with 6 rounds of 9mm ammunition at 1XXXX Brewster Road, Cleveland Heights, Ohio.

264.     On or about October 14, 2021, FICKLIN possessed a Smith and Wesson, .40 handgun, bearing serial number SW40VE, loaded with 14 rounds of .40 ammunition at 1XXXX Brewster Road, Cleveland Heights, Ohio.

265.     On or about October 14, 2021, FICKLIN possessed 49 rounds of .357 ammunition at 1XXXX Brewster Road, Cleveland Heights, Ohio.

266.     On or about October 14, 2021, FICKLIN possessed 4 cellular telephones (including the one used to communicate with GOMEZ-ORRANTIA and Person-1 between June and November, 2020 to facilitate cocaine kilogram deliveries to FICKLIN and cocaine sales proceeds pickups from FICKLIN) at 1XXXX Brewster Road, Cleveland Heights, Ohio.

267.     On or about October 14, 2021, FICKLIN possessed a money counting machine at 1XXXX Brewster Road, Cleveland Heights, Ohio.

268.     On or about October 14, 2021, FICKLIN possessed a Ruger, .357 handgun, bearing serial number 579-71059, loaded with 5 rounds of .357 ammunition.

269.     On or about October 14, 2021, FICKLIN possessed a kilogram-sized drug press at 7XXX Carnegie Avenue, Cleveland, Ohio.

All in violation of Title 21, United States Code, Section 846.

44

COUNT 2
(Interstate Travel in Aid of Racketeering, 18 U.S.C. § 1952(a)(3))

The Grand Jury further charges:

270.    On or about April 14, 2019, in the Northern District of Ohio, Eastern Division, and elsewhere, Defendants                                                                                              did travel in interstate commerce between the State of New Mexico and the State of Ohio, with the intent to promote, manage, establish, carry on, and facilitate the promotion, management, establishment, and carrying on of an unlawful activity, to wit: a business enterprise involving the distribution of cocaine, a Schedule II controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1) and 846, and then said                           thereafter, did perform and attempt to perform acts to promote, manage, carry on, and facilitate the promotion, management, and carrying on of said unlawful activity, in violation of Title 18, United States Code, Sections 1952(a)(3) and 2.

COUNT 3
(Interstate Travel in Aid of Racketeering, 18 U.S.C. § 1952(a)(3))

The Grand Jury further charges:

271.    On or about June 10, 2020, in the Northern District of Ohio, Eastern Division, and elsewhere, Defendant                                                                                              did travel in interstate commerce between the State of New Mexico and the State of Ohio, with the intent to promote, manage, establish, carry on, and facilitate the promotion, management, establishment, and carrying on of an unlawful activity, to wit: a business enterprise involving the distribution of cocaine, a Schedule II controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1) and 846, and then said                           thereafter, did perform and attempt to perform acts to promote, manage, carry on, and facilitate the promotion, management, and carrying on of said unlawful activity, in violation of Title 18, United States Code, Sections 1952(a)(3) and 2.

45

COUNT 4
(Possession with Intent to Distribute Cocaine, 21 U.S.C. §§ 841(a)(1) and (b)(1)(A))

The Grand Jury further charges:

272.    On or about June 16, 2020, in the Northern District of Ohio, Eastern Division,

Defendant CHRISTOPHER FICKLIN, aka "LLANTES," did knowingly and intentionally possess

with the intent to distribute 5,000 grams or more of a mixture and substance containing a detectable

amount of cocaine, a Schedule II controlled substance, in violation of Title 21, United States Code,

Sections 841(a)(1) and (b)(1)(A).

COUNT 5
(Possession with Intent to Distribute Cocaine, 21 U.S.C. §§ 841(a)(1) and (b)(1)(A))

The Grand Jury further charges:

273.    On or about July 2, 2020, in the Northern District of Ohio, Eastern Division,

Defendant CHRISTOPHER FICKLIN, aka "LLANTES," did knowingly and intentionally possess

with the intent to distribute 5,000 grams or more of a mixture and substance containing a detectable

amount of cocaine, a Schedule II controlled substance, in violation of Title 21, United States Code,

Sections 841(a)(1) and (b)(1)(A).

COUNT 6
(Possession with Intent to Distribute Cocaine, 21 U.S.C. §§ 841(a)(1) and (b)(1)(A))

The Grand Jury further charges:

274.    On or about July 6, 2020, in the Northern District of Ohio, Eastern Division,

Defendant CHRISTOPHER FICKLIN, aka "LLANTES," did knowingly and intentionally possess

with the intent to distribute 5,000 grams or more of a mixture and substance containing a detectable

amount of cocaine, a Schedule II controlled substance, in violation of Title 21, United States Code,

Sections 841(a)(1) and (b)(1)(A).

## COUNT 7
(Possession with Intent to Distribute Cocaine, 21 U.S.C. §§ 841(a)(1) and (b)(1)(A))

The Grand Jury further charges:

275.    On or about July 14, 2020, in the Northern District of Ohio, Eastern Division, Defendant CHRISTOPHER FICKLIN, aka "LLANTES," did knowingly and intentionally possess with the intent to distribute 5,000 grams or more of a mixture and substance containing a detectable amount of cocaine, a Schedule II controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1) and (b)(1)(A).

## COUNT 8
(Possession with Intent to Distribute Cocaine, 21 U.S.C. §§ 841(a)(1) and (b)(1)(A))

The Grand Jury further charges:

276.    On or about July 27, 2020, in the Northern District of Ohio, Eastern Division, Defendant CHRISTOPHER FICKLIN, aka "LLANTES," did knowingly and intentionally possess with the intent to distribute 5,000 grams or more of a mixture and substance containing a detectable amount of cocaine, a Schedule II controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1) and (b)(1)(A).

## COUNT 9
(Possession with Intent to Distribute Cocaine, 21 U.S.C. §§ 841(a)(1) and (b)(1)(A))

The Grand Jury further charges:

277.    On or about August 1, 2020, in the Northern District of Ohio, Eastern Division, Defendant CHRISTOPHER FICKLIN, aka "LLANTES," did knowingly and intentionally possess with the intent to distribute 5,000 grams or more of a mixture and substance containing a detectable amount of cocaine, a Schedule II controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1) and (b)(1)(A).

47

COUNT 10
(Possession with Intent to Distribute Cocaine, 21 U.S.C. §§ 841(a)(1) and (b)(1)(A))

The Grand Jury further charges:

278.     On or about August 6, 2020, in the Northern District of Ohio, Eastern Division, Defendant CHRISTOPHER FICKLIN, aka "LLANTES," did knowingly and intentionally possess with the intent to distribute 5,000 grams or more of a mixture and substance containing a detectable amount of cocaine, a Schedule II controlled substance, in violation of Title 21. United States Code, Sections 841(a)(1) and (b)(1)(A).

COUNT 11
(Possession with Intent to Distribute Cocaine, 21 U.S.C. §§ 841(a)(1) and (b)(1)(A))

The Grand Jury further charges:

279.     On or about August 16, 2020, in the Northern District of Ohio, Eastern Division, Defendant CHRISTOPHER FICKLIN, aka "LLANTES," did knowingly and intentionally possess with the intent to distribute 5,000 grams or more of a mixture and substance containing a detectable amount of cocaine, a Schedule II controlled substance, in violation of Title 21. United States Code, Sections 841(a)(1) and (b)(1)(A).

COUNT 12
(Possession with Intent to Distribute Cocaine, 21 U.S.C. §§ 841(a)(1) and (b)(1)(A))

The Grand Jury further charges:

280.     On or about August 19, 2020, in the Northern District of Ohio, Eastern Division, Defendant CHRISTOPHER FICKLIN, aka "LLANTES," did knowingly and intentionally possess with the intent to distribute 5,000 grams or more of a mixture and substance containing a detectable amount of cocaine, a Schedule II controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1) and (b)(1)(A).

48

## COUNT 13
(Possession with Intent to Distribute Cocaine, 21 U.S.C. §§ 841(a)(1) and (b)(1)(A))

The Grand Jury further charges:

281. On or about August 21, 2020, in the Northern District of Ohio, Eastern Division, Defendant CHRISTOPHER FICKLIN, aka "LLANTES," did knowingly and intentionally possess with the intent to distribute 5,000 grams or more of a mixture and substance containing a detectable amount of cocaine, a Schedule II controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1) and (b)(1)(A).

## COUNT 14
(Possession with Intent to Distribute Cocaine, 21 U.S.C. §§ 841(a)(1) and (b)(1)(A))

The Grand Jury further charges:

282. On or about August 31, 2020, in the Northern District of Ohio, Eastern Division, Defendant CHRISTOPHER FICKLIN, aka "LLANTES," did knowingly and intentionally possess with the intent to distribute 5,000 grams or more of a mixture and substance containing a detectable amount of cocaine, a Schedule II controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1) and (b)(1)(A).

## COUNT 15
(Possession with Intent to Distribute Cocaine, 21 U.S.C. §§ 841(a)(1) and (b)(1)(A))

The Grand Jury further charges:

283. On or about September 21, 2020, in the Northern District of Ohio, Eastern Division, Defendant CHRISTOPHER FICKLIN, aka "LLANTES," did knowingly and intentionally possess with the intent to distribute 5,000 grams or more of a mixture and substance containing a detectable amount of cocaine, a Schedule II controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1) and (b)(1)(A).

49

COUNT 16
(Possession with Intent to Distribute Cocaine, 21 U.S.C. §§ 841(a)(1) and (b)(1)(A))

The Grand Jury further charges:

284.    On or about September 23, 2020, in the Northern District of Ohio, Eastern Division, Defendant CHRISTOPHER FICKLIN, aka "LLANTES," did knowingly and intentionally possess with the intent to distribute 5,000 grams or more of a mixture and substance containing a detectable amount of cocaine, a Schedule II controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1) and (b)(1)(A).

COUNT 17
(Possession with Intent to Distribute Cocaine, 21 U.S.C. §§ 841(a)(1) and (b)(1)(A))

The Grand Jury further charges:

285.    On or about October 1, 2020, in the Northern District of Ohio, Eastern Division, Defendant CHRISTOPHER FICKLIN, aka "LLANTES," did knowingly and intentionally possess with the intent to distribute 5,000 grams or more of a mixture and substance containing a detectable amount of cocaine, a Schedule II controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1) and (b)(1)(A).

COUNT 18
(Possession with Intent to Distribute Cocaine, 21 U.S.C. §§ 841(a)(1) and (b)(1)(A))

The Grand Jury further charges:

286.    On or about October 6, 2020, in the Northern District of Ohio. Eastern Division, Defendant CHRISTOPHER FICKLIN, aka "LLANTES," did knowingly and intentionally possess with the intent to distribute 5,000 grams or more of a mixture and substance containing a detectable amount of cocaine, a Schedule II controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1) and (b)(1)(A).

COUNT 19

(Possession with Intent to Distribute Cocaine, 21 U.S.C. §§ 841(a)(1) and (b)(1)(A))

The Grand Jury further charges:

287.    On or about October 13, 2020, in the Northern District of Ohio, Eastern Division, Defendant CHRISTOPHER FICKLIN, aka "LLANTES," did knowingly and intentionally possess with the intent to distribute 5,000 grams or more of a mixture and substance containing a detectable amount of cocaine, a Schedule II controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1) and (b)(1)(A).

COUNT 20

(Possession with Intent to Distribute Cocaine, 21 U.S.C. §§ 841(a)(1) and (b)(1)(A))

The Grand Jury further charges:

288.    On or about October 28, 2020, in the Northern District of Ohio, Eastern Division, Defendant CHRISTOPHER FICKLIN, aka "LLANTES," did knowingly and intentionally possess with the intent to distribute 5,000 grams or more of a mixture and substance containing a detectable amount of cocaine, a Schedule II controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1) and (b)(1)(A).

COUNT 21

(Distribution of Cocaine, 21 U.S.C. §§ 841(a)(1) and (b)(1)(B))

The Grand Jury further charges:

289.    On or about October 28, 2020, in the Northern District of Ohio, Eastern Division, Defendant CHRISTOPHER FICKLIN, aka "LLANTES," did knowingly and intentionally distribute 500 grams or more of a mixture and substance containing a detectable amount of cocaine, a Schedule II controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1) and (b)(1)(B).

51

COUNT 22

(Possession with Intent to Distribute Cocaine, 21 U.S.C. §§ 841(a)(1) and (b)(1)(B))

The Grand Jury further charges:

290.  On or about October 28, 2020, in the Northern District of Ohio, Eastern Division, Defendant ROBERT ATKINSON did knowingly and intentionally possess with the intent to distribute 500 grams or more of a mixture and substance containing a detectable amount of cocaine, a Schedule II controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1) and (b)(1)(B).

COUNT 23

(Possession with Intent to Distribute Cocaine, 21 U.S.C. §§ 841(a)(1) and (b)(1)(A))

The Grand Jury further charges:

291.  On or about October 30, 2020, in the Northern District of Ohio, Eastern Division, Defendant CHRISTOPHER FICKLIN, aka "LLANTES," did knowingly and intentionally possess with the intent to distribute 5,000 grams or more of a mixture and substance containing a detectable amount of cocaine, a Schedule II controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1) and (b)(1)(A).

COUNT 24

(Attempted Possession with Intent to Distribute Cocaine, 21 U.S.C. §§ 841(a)(1) and (b)(1)(A))

The Grand Jury further charges:

292.  On or about November 7, 2020, in the Northern District of Ohio, Eastern Division, Defendant CHRISTOPHER FICKLIN, aka "LLANTES," did knowingly and intentionally attempt to possess with the intent to distribute 5,000 grams or more of a mixture and substance containing a detectable amount of cocaine, a Schedule II controlled substance, in violation of Title 21, United States Code, Sections 846, 841(a)(1) and (b)(1)(A).

COUNT 25

(Felon in Possession of Firearms, 18 U.S.C. §§ 922(g)(1) and 924(a)(2))

The Grand Jury further charges:

293.    On or about October 14, 2021, in the Northern District of Ohio, Eastern Division,

Defendant CHRISTOPHER FICKLIN, knowing he had previously been convicted of a crime

punishable by imprisonment for terms exceeding one year, that being: Trafficking in Drugs, a felony

of the third degree, on or about February 16, 1994, in Case Number CR-93-310364-ZA , in the

Cuyahoga County Court of Common Pleas, knowingly possessed in and affecting interstate

commerce firearms, to wit: a Taurus handgun, bearing serial number TCM78142; a Smith and

Wesson, .40 handgun, bearing serial number SW40VE, and possessed a Ruger, .357 handgun,

bearing serial number 579-71059, said firearms having been shipped and transported in interstate

commerce, in violation of Title 18, United States Code, Sections 922(g)(1) and 924(a)(2).

## COUNT 26
(International Money Laundering Conspiracy, 18 U.S.C. § 1956(a)(2) and (h))

The Grand Jury further charges:

294.    The factual allegations in Count 1 are realleged and incorporated by reference as if

fully set forth herein.

295.    Beginning on or about April, 2019, and continuing until on or about November 2020,

in the Northern District of Ohio, Eastern Division, and elsewhere, CHRISTOPHER FICKLIN, aka

"LLANTES", DAVID GOMEZ-ORRANTIA, aka "TUTU", and                                               ,

the defendants herein, did knowingly combine, conspire, and agree with each other

and with other persons known and unknown to the Grand Jury to commit offenses against the United

States in violation of Title 18, United States Code, Section 1956, to wit: transport, transmit, transfer,

and attempt to transport, transmit, transfer monetary instruments and funds, that is United States

currency, from a place in the United States, that is the State of Ohio to a place outside the United

53

States, that is Mexico, with the intent to promote the carrying on of specified unlawful activity, that

is distribution of methamphetamine and cocaine, in violation of Title 18, United States Code,

Sections 1956(a)(2)(A).

296.    All in violation of Title 18, United States Code, Section 1956(h).

## COUNTS 27-30

The Grand Jury further charges:

297.    On or about the dates and approximate times listed below, in the Northern District of

Ohio, and elsewhere, the Defendants listed below did knowingly and intentionally use a

communication facility, to wit: a telephone, to facilitate acts constituting a felony under Title 21,

United States Code, Section 846:

| Count | Defendants | Date | Time |
|-------|-----------|------|------|
| 27 | CHRISTOPHER FICKLIN, aka "LLANTES" | June 16, 2020 | 7:43 a.m. – 7:54 a.m. |
| 28 | CHRISTOPHER FICKLIN, aka "LLANTES" | July 2, 2020 | 7:57 a.m. – 2:57 p.m. |
| 29 | CHRISTOPHER FICKLIN, aka "LLANTES" DAVID GOMEZ-ORRANTIA, aka "TUTU" | November 6, 2020 | 4:30 p.m. – 4:32 p.m. |
| 30 | DAVID GOMEZ-ORRANTIA, aka "TUTU" | November 7, 2020 | 8:24 a.m. – 8:26 a.m., |

All in violation of Title 21, United States Code, Section 843(b).

## FORFEITURE

The Grand Jury further charges:

298.    For the purpose of alleging forfeiture pursuant to 21 U.S.C. § 853, 18 U.S.C. §§

981(a)(1)(C) and 924, 28 U.S.C. § 2461(c), and 18 U.S.C. § 982, the allegations of Counts 1-30 are

incorporated herein by reference. As a result of the foregoing offenses, Defendants CHRISTOPHER

FICKLIN, aka LLANTES, DAVID GOMEZ-ORRANTIA, aka TUTU,

and ROBERT ATKINSON, shall forfeit to the United States any and all property constituting, or derived from, any proceeds they obtained, directly or indirectly, as the result of such violations; and any and all of their property used or intended to be used, in any manner or part, to commit or to facilitate the commission of such violations; any property real or personal, which constitutes or is derived from proceeds traceable to the violations set forth herein; any and all property involved in the violations set forth herein or any property traceable to such property; and/or any firearms and ammunition involved in the commission of the violations set forth herein; including, but not limited to, the following:

a. Real Property located at 7719 Carnegie Avenue, Cleveland, Ohio (Permanent Parcel No. 118-16-117) in the name of CNT Construction Co. [CHRISTOPHER FICKLIN];

b. a Taurus handgun, bearing serial number TCM78142 [CHRISTOPHER FICKLIN];

c. a Smith and Wesson, .40 handgun, bearing serial number SW40VE, [CHRISTOPHER FICKLIN]; and

d. a Ruger, .357 handgun, bearing serial number 579-71059 [CHRISTOPHER FICKLIN].

A TRUE BILL.

Original document - Signatures on file with the Clerk of Courts, pursuant to the E-Government Act of 2002.

55

United States v. Christopher Ficklin, aka Llantes, et al.

A TRUE BILL.

_____

FOREPERSON

By: _____

      Robert F. Corts, Chief
      OCDETF Unit

56